UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-62473-CIV-MARRA/HOPKINS

KENNETH YAMASHITA,
individually,

      Plaintiff,

vs.

MERCK & CO., INC., a
New Jersey corporation,

      Defendant.
_____/

## ORDER AND OPINION GRANTING MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Merck & Co., Inc.'s Motion to

Dismiss Plaintiff Kenneth Yamashita's Amended Complaint [DE 21]; and Plaintiff's

Request for Oral Argument Regarding Defendant's Motion to Dismiss [DE 25].  The Court

has carefully considered the motion, response, reply, and is otherwise fully advised in

the premises.  The Amended Complaint ("complaint") alleges the following seven

causes of action against Merck & Co. Inc. ("Merck"):  fraud in the inducement (Count

I), breach of written agreement (Count II), fraud in the inducement (also labeled Count

II), breach of fiduciary duty (Count III), claim for unpaid wages (Count IV), intentional

infliction of emotional distress (Count V), and racial discrimination (Count VI) [DE 20].

At the outset, Merck asserts that all of Plaintiff's claims are barred by the

general release of claims that Mr. Yamashita executed in exchange for substantial

severance benefits.  "Because Plaintiff affirmatively agreed to release Defendant

from, *inter alia*, any and all claims (a) arising out of, or in any way related to, his

employment with Merck; (b) under any federal, state or local law prohibiting employment discrimination based on race; (c) under contract or tort, including claims for intentional or negligent infliction of emotional distress, fraud, breach of express or implied contract, and/or any other wrongful conduct; and (d) for wages or bonuses, Plaintiff is barred from proceeding with his claims."  DE 21 at 1-2.  The Court agrees.

**Standard of Review**

For purposes of deciding a motion to dismiss, the Court accepts the allegations of the Complaint as true and views the facts in the light most favorable to Plaintiff. *See, e.g., Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000).  A plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A  court considers only the complaint and the exhibits attached to the complaint.  A complaint may be dismissed for failure to state a claim "when its allegations ... show that an affirmative defense bars recovery on the claim."  *Haddad v. Dudek*, 784 F. Supp. 2d 1308, 1328-29 (M.D. Fla. 2011) *citing Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).  "If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)."  *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009).

In the case at bar, Defendant has raised the defense of general release in the form of a Rule 12(b)(6) motion supported by the Separation Agreement (attached by Plaintiff to his original complaint filed in state court as exhibit D and subsequently

filed in this case as DE 10-2 ("Tab 2")).  General release, however, is an affirmative

defense that usually is raised under Federal Rule of Civil Procedure 8(c) and not by

motion pursuant to Rule 12(b). Nevertheless, Defendant may raise general release as a

bar to this suit by a motion to dismiss because the defense's existence can be judged

on the face of an exhibit attached to the complaint. *See Concordia v. Bendekovic*, 693

F.2d 1073, 1075 (11th Cir. 1982).

## Factual Background and Allegations

Plaintiff Kenneth Yamashita ("Yamashita" or "Plaintiff") began his employment

with Schering-Plough (which merged with Merck in 2009) in approximately 1991, until

his separation from employment on October 8, 2011.  He served as the Plant Manager

of the Miami Lakes facility.  *See* Compl. ¶¶ 4-5, 29.  In March 2010, Merck and Plaintiff

entered into a Retention Bonus Payback Agreement ("Retention Agreement")

(attached by Plaintiff to his original complaint filed in state court as exhibit B and

subsequently filed in this case as DE 10-1 ("Tab 1")).[1]  In the Retention Agreement,

Merck agreed to pay Plaintiff a retention bonus of $96,357 if he remained employed

with Merck through December 31, 2011, or if he was terminated without cause before

December 31, 2011.  Compl. ¶¶ 12-16.[2]

---

[1]  Plaintiff filed this Retention Agreement, as well as the Separation Agreement, in the court record in state court.  In an attempt to preserve the confidentiality required by the agreements, Defendant redacted those attachments in its removal filing.  This Court, however, denied Defendant's Motion to Seal and the unredacted versions of the Retention and Separation Agreements are available at DE 10-1, 10-2, 21-1 and 21-2.

[2]  Among other requirements, the Retention Agreement contained a confidentiality provision:  "You agree to hold the existence of this letter and the terms

After Merck merged with Schering-Plough, Merck announced a "Hand Raising Program" ("the Program") which would reduce its workforce by 15%.  In July 2011, Merck announced it would continue the Program in an attempt to reduce its workforce by another 13%.  Compl. ¶ 7.  Under the Program, Merck employees had the option of "raising their hand" to grant Merck the discretion to terminate those employees in exchange for severance benefits.  Compl. ¶¶ 8-10.

Plaintiff asked Merck about his eligibility to participate in the Program.  Compl. ¶ 24.  Merck informed Plaintiff that he was eligible to participate in the Program and encouraged him to do so.  Compl. ¶ 25.  On or about July 25, 2011, Plaintiff decided to sign the Hand Raiser Request for Separation Form and allow Merck to decide whether to amicably terminate his employment.  Compl. ¶ 28.  At that time, Plaintiff sought confirmation that Merck would also pay his retention payment pursuant to their Retention Agreement.  Merck informed Plaintiff that due to his participation in the Program, he was no longer eligible to receive his retention payment.  Compl. ¶¶ 31-32.

In connection with the Program, Merck provided Plaintiff with a Separation Agreement and General Release.  Compl. ¶ 29.  Plaintiff did not immediately sign the Separation Agreement.  Instead, Plaintiff corresponded with Merck to determine what bases Merck had for denying him his retention payment.  Comp. ¶ 33.  Merck

---

and conditions of this letter in strict confidence and to not disclose, except as may be required by law or legal process, any such information to any third party . . . ."  DE 21-1 at 6 of 13, ¶ 5.  Payment of the $96,357 was contingent on Plaintiff's adherence to this confidentiality provision.  *Id*. at ¶ 3(b)(ii).

misrepresented[3] to Plaintiff that, based upon Merck's company policy, no employee that Merck terminated due to participation in the Program – even if such employee had also executed a Retention Agreement – was eligible to receive both a severance payment and a retention payment.  Instead, such employees were only eligible to receive a severance payment.  Compl. ¶ 34.  Plaintiff specifically asked Merck if similarly-situated employees – those that had been terminated due to participation in the Program and had also executed a Retention Agreement – would be treated in a similar fashion.  Merck fraudulently[4] represented to Plaintiff that all employees who had been terminated due to participation in the Program and had also executed a Retention Agreement would only be eligible to receive a severance payment.  Compl. ¶¶ 35-36.  Based upon Merck's representation, on or about November 22, 2011, Plaintiff executed the Separation Agreement and, as a result, Plaintiff received a lump sum severance benefit in the amount of $294,342.67 ("Severance Payment").  Compl. ¶ 37, DE 10-2 at 2 of 7.  Thereafter, Plaintiff discovered that former Merck employees who had been terminated as a result of participation in the Program had received both a severance payment and a retention payment.  Compl. ¶ 38.  Plaintiff seeks unpaid wages in the amount of $96,357, damages, attorney's fees, costs and interest.

The Separation Agreement signed by Plaintiff states that Plaintiff agrees to the General Release and Other Provisions in exchange for a $294,342.67 Severance

---

[3]  As previously stated, for purposes of this motion, the Court accepts the allegations of the complaint as true.

[4]  *Id.  See supra* footnote 2.  This is the only allegation of fraud or misrepresentation contained within the complaint.

Payment.  Specifically, Plaintiff agreed to a Waiver of Claims containing the following

unequivocal language:

> In exchange for the Severance Benefits described above, I release the
> Released Parties, from all claims and liabilities (both known and
> unknown) in any jurisdiction worldwide which I may have against it as of
> the date on which I sign this Agreement.  These claims include without
> limitation:

> • Any and all claims arising out of or in any way related to my employment
> with the Company and/or its Affiliates, the terms and conditions of my
> employment with the Company and/or its Affiliates, and the termination
> of my employment with the Company and/or its Affiliates;

> • Any and all claims arising under any federal, state, national or local law,
> statute, ordinance, regulation, or executive order that prohibits
> employment discrimination, harassment or retaliation based race,
> national origin, . . .

> • Any and all claims under any federal, state, national or local law that
> restricts the termination of employment or that otherwise regulates
> employment . . .

> • Any and all claims under contract, tort or common law, including, but not
> limited to, claims for wrongful or constructive discharge, personal injury,
> intentional or negligent infliction of emotional distress, fraud, negligent
> hiring/supervision, defamation, invasion of privacy, interference with
> contract or with prospective e economic advantage, breach of express or
> implied contract, breach of covenants of good faith and fair dealing
> and/or any other wrongful conduct, including specifically any claims
> arising out of any legal or contractual restriction on the Company's
> and/or its Affiliates' right to terminate its employees;

> • Any and all claims for wages, bonuses, stock or stock options, deferred
> compensation, disability benefits, termination indemnities, severance,
> notice pay and attorneys' fees.

DE 10-2 at 4 of 7.  By signing the Separation Agreement, Plaintiff also specifically

entered into a Promise Not to Sue, which states, in relevant part, that:

Except for my right to file a lawsuit to receive my Severance Benefits (in the event the Company fails to provide these benefits to me), I give up all rights that I have to file a lawsuit against each and any of the Released Parties.  I also give up my right to any remedies that I could otherwise receive, if someone else filed a lawsuit against each or any of the Released Parties. . . . [B]y signing this Separation Agreement and General Release I am waiving my right to obtain any monetary or other recovery based on any such charge.

DE 10-2 at 5 of 7.  Plaintiff also specifically acknowledged:

I have carefully read and fully understand this entire document, including the "General Release" and "other Provisions" sections.  *I understand that they represent the entire understanding between the Company and me and I have not relied upon any other representation or statement (either written or oral) concerning the reasons for my termination or the terms of this document.*  I also affirm that my decision to accept the Company's offer of Severance Benefits is entirely voluntary and that no representative of the Company and/or its Affiliates has tried to influence my decision.  I acknowledge that the Severance Benefits are significant and substantially greater than those benefits to which I am otherwise entitled under the policies of the Company and/or its Affiliates.

DE 10-2 at 6-7 of 7 (emphasis provided).

**Discussion**

The Non-Reliance Provision and Allegations of Fraudulent Inducement

Merck seeks dismissal with prejudice of Plaintiff's claims as barred by the general release of the Separation Agreement executed by Plaintiff.  Plaintiff seeks to avoid application of the release provision by claiming that it was procured through fraud.

The law is clear:  A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or dealt with, or expressly

contradicted, in a later written contract.  *Giallo v. New Piper Aircraft, Inc.*, 855 So. 2d 1273 (Fla. Dist. Ct. App. 2003), cause dismissed, 869 So. 2d 539 (Fla. 2003); *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So. 2d 536 (Fla. Dist. Ct. App. 2003); *Englezios v. Batmasian*, 593 So. 2d 1077 (Fla. Dist. Ct. App. 1992).  Nor may an action for fraud in the inducement proceed where the alleged fraud contradicts the subsequent written contract as we have here.  Indeed, claims for fraudulent inducement are barred when the alleged misrepresentation explicitly contradicts an unambiguous provision in a written contract.  *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286 (M.D. Fla. 2009);  *Mac-Gray Services, Inc. v. DeGeorge*, 913 So. 2d 630 (Fla. Dist. Ct. App. 2005); *Wadlington v. Continental Medical Services, Inc.*, 728 So. 2d 352 (Fla. Dist. Ct. App. 1999); *Eclipse Medical, Inc. v. American Hydro-Surgical Instruments*, Inc., 262 F. Supp. 2d 1334 (S.D. Fla. 1999), *aff'd*, 235 F.3d 1344 (11th Cir. 2000) (applying Florida law); *Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364 (S.D. Fla. 2003) (applying Florida law).  Thus, statements or alleged misrepresentations made to induce an individual to enter a contract, if later contained within the terms of the actual contract, cannot constitute a basis on which to bring a fraud claim.  *Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364 (S.D. Fla. 2003) (applying Florida law).

Plaintiff seeks to circumvent the terms of the Separation Agreement's non-reliance clause by claiming that he was fraudulently induced to execute the Separation Agreement by being told that any similarly-situated employees – those who were entitled to receive both a retention payment and a severance payment - would only be

receiving a severance payment upon execution of the Separation Agreement. However, courts routinely honor non-reliance clauses, refusing to allow parties to rely on promises or representations made outside the contract.  *See, e.g., Taylor Woodrow Homes Fla., Inc. v.4/46-A Corp.*, 850 So.2d 536, 542-43 (Fla. Dist. Ct. App. 2003); *Giallo v. New Piper Aircraft, Inc.*, 855 So.2d 1273, 1275 (Fla. Dist. Ct. App. 2003).

When the contract itself includes a clear and unambiguous non-reliance provision as does the Settlement Agreement in this case (confirming that Plaintiff carefully read and fully understood the entire document, including the "General Release" and "other Provisions" sections, and that he understood "that they represent the entire understanding between the Company and me and I have not relied upon any other representation or statement (either written or oral) concerning the reasons for my termination or the terms of this document"), any alleged reliance upon an oral representation outside of the settlement agreement is legally unjustified.  *White Const. Co., Inc. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302 (M.D. Fla. 2009).  Reliance on fraudulent representations is unreasonable as a matter of law under such circumstances.  *Topp, Inc. v. Uniden America Corp.*, 513 F. Supp. 2d 1345 (S.D. Fla. 2007).

Plaintiff attempts to save his case by arguing "[b]ecause it is alleged that the misrepresentations were made to induce Plaintiff to execute the Separation Agreement – and thereby the non-reliance provision – Plaintiff's claims for fraud in the inducement are separate and distinct from the Separation Agreement, and therefore

the non-reliance provision contained therein is not applicable." DE 24, ¶ 24. However, there is only one misrepresentation alleged, not two separate and distinct misrepresentations. Moreover, the two cases Plaintiff cites for this broad proposition, *Stefan v. Singer Island Condominiums, Ltd.*, 2009 WL 426291, at *16 (S.D. Fla. 2009) and *McArthur Deli, LLC v. McCowtree Bros. Dairy, Inc.*, 2011 WL 2118701, at *8 (S.D. Fla. 2011) do not address non-reliance clauses and are unpersuasive.

The contract does address the alleged representations that Plaintiff claims induced him to execute the agreement in the non-reliance provision; the unambiguous language of the Separation Agreement directly negates Plaintiff's fraud in the inducement claims by affirmatively stating that no statements outside the contract were relied upon. Further, the Separation Agreement clearly and unambiguously provides that Plaintiff would not be entitled to any additional monetary compensation from Merck, separate and apart from the severance payments offered. Since all of Plaintiff's claims are barred by the general release of claims he executed, the entire complaint must be dismissed with prejudice. Allowing Plaintiff leave to amend would be futile. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant Merck & Co., Inc.'s Motion to Dismiss Plaintiff Kenneth Yamashita's Amended Complaint [DE 21] is granted. Plaintiff's Request for Oral Argument Regarding Defendant's Motion to Dismiss [DE 25] is denied

as moot.  This case is closed.  Any pending motions are denied as moot.

       **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 24th day of January, 2013.

_____

KENNETH A. MARRA
United States District Judge